*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ARD, Minor.

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

ARD,

        Respondent-Appellant.

UNPUBLISHED
September 22, 2022

No. 357044
Berrien Circuit Court
Family Division
LC No. 2019-000593-DL

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order of disposition removing him from his mother's care and placing him in a residential treatment program following jury trial adjudications of three counts of second-degree criminal sexual conduct, MCL 750.520c(1)(a) (person under 13). For the reasons set forth in this opinion, we affirm.

This case arises out of sexual assaults of EK—a minor—by respondent on multiple occasions in 2019. A petition was filed against respondent, alleging that respondent came within the provisions of MCL 712A.2 because respondent engaged in sexual contact with a child under 13 years old, contrary to MCL 750.520c(1)(a). Charges against respondent included three counts of second-degree criminal sexual conduct. A referee authorized the petition and found that respondent came within the provisions of MCL 712A.2. Before the jury trial, the trial court ordered that respondent remains under the supervision of the court and in the custody of his mother.

At the conclusion of the jury trial, the jury adjudicated respondent responsible for three counts of second-degree criminal sexual conduct. The court allowed respondent to remain in the care and custody of his mother, Stephanie Bills, because there had been no problems during these proceedings with regard to respondent's conduct.

-1-

The parties later appeared before the court for a dispositional hearing. The court considered the seriousness of the offenses committed by respondent and the prolonged nature of these offenses against EK. The court also considered respondent's failure to admit guilt to his crimes, and that respondent continued to contact EK's family members and argue about his offenses, which displayed a lack of empathy. The court found that a residential placement would be appropriate because it did not seem appropriate for respondent to remain in the care of his mother, who also denied respondent's guilt of the convicted offenses, and because specialized services would be more available outside the home. The court adjourned the dispositional hearing to allow time for the juvenile probation office to recommend a residential treatment.

At a continued dispositional hearing, Tracy Cagle, the probation officer assigned to respondent's case, stated that she believed that a community-based program "would work." The court was concerned about a community placement because of the denials of respondent's guilt by both respondent and his mother.

Bills testified that respondent was doing "a lot better" since the beginning of his probation, and he was making better choices in school. Further, Bills stated that respondent listened to her and followed her guidance. There had been no signs of incorrigible behavior or deviancy over the previous year with regard to respondent. However, Bills continued to deny that respondent committed the offenses at issue in this matter. Bills stated that she believed it was in respondent's best interest if he remained in her care.

Cagle testified that she originally noted in her dispositional report that she was considering community-based treatment for respondent, and she recommended that respondent participate in outpatient therapy through Lincoln Therapeutic. Cagle stated that her current recommendation was that respondent be placed at Wolverine Secure—a residential treatment program—though the Lincoln Therapeutic evaluation did not recommend residential treatment. Cagle changed her recommendation because she believed the court was dissatisfied with her original report. Cagle stated that respondent had completed all of the terms and conditions set forth by the court for his probation and noted that he attends online school. Respondent received a low-risk score on the Youth Assessment and Screening Instrument (YASI) test, which—in Cagle's opinion—put the court in a position to leave respondent in the community and not in a residential placement. Cagle stated that she believed the court "wanted residential treatment," though she believed that respondent would benefit from outpatient treatment rather than a secure placement.

The court noted that it had concerns regarding respondent's serious behavior. The court stated that, while respondent had not committed any new criminal offenses since the incidents involving EK, he did have a previous adjudication for second-degree home invasion. The court reasoned that respondent needed more help than he could receive in the community, and expressed concern over respondent's and Bills's denials regarding respondent's adjudications. The court found "it hard to believe that outpatient therapy [was] going to be able to provide [respondent] with quite frankly any benefit" while he remained in Bills's care. The court also referenced respondent's inappropriate social media messages to EK's family members, which indicated that respondent had not "matured," was not open to moving past this incident, and those instances occurred while in Bills' care.

For these reasons, "including the very serious nature of this offense and the hope that [respondent's] placement in a residential facility will be able to promote his rehabilitation in a more effective way than remaining" in his mother's care, the court ordered that respondent receive a residential placement. The court found it to be contrary to respondent's welfare to remain in his mother's home because the "supervision in home [had] been inadequate to control him and address his needs with regard to his own mental and emotional harm and [placed] him[self] and others at risk of continued harm."

Respondent argues that the trial court abused its discretion when it ordered respondent to be removed from his parent and placed in a private institution or agency contrary to MCL 712A.18.

"The trial court's entry of an order of disposition in a juvenile-delinquency proceeding is reviewed for an abuse of discretion, while its factual findings are reviewed for clear error." *In re Diehl*, 329 Mich App 671, 687; 944 NW2d 180 (2019). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *Id.* (quotation marks and citation omitted). "This Court will reverse a trial court's finding of fact only if this Court is left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted). "[T]his Court reviews de novo the interpretation of statutes and court rules." *Id.*

MCL 712A.18(1), in relevant part, provides:

> (1) If the court finds that a juvenile concerning whom a petition is filed is not within this chapter, the court shall enter an order dismissing the petition. Except as otherwise provided in subsection (10), if the court finds that a juvenile is within this chapter, the court shall order the juvenile returned to his or her parent if the return of the juvenile to his or her parent would not cause a substantial risk of harm to the juvenile or society.

MCL 712A.18(1) then provides that a trial court may enter a number of orders of disposition that are "appropriate for the welfare of the juvenile and society in view of the facts proven and ascertained . . . ." *Id.* MCL 712A.18(1)(e) provides, in relevant part, that a court may

> [C]ommit the juvenile to a public institution, county facility, institution operated as an agency of the court or county, or agency authorized by law to receive juveniles of similar age, sex, and characteristics. If the juvenile is not a ward of the court, the court shall commit the juvenile to the department or, if the county is a county juvenile agency, to that county juvenile agency for placement in or commitment to an institution or facility as the department or county juvenile agency determines is most appropriate, subject to any initial level of placement the court designates.

Alternative orders may be issued by a trial court under MCL 712A.18(1), including orders to "[p]lace the juvenile on probation, or under supervision in the juvenile's own home or in the home of an adult who is related to the juvenile." MCL 712A.18(1)(b).

The trial court's dispositional orders must be "appropriate for the welfare of the juvenile and society in view of the facts proven and ascertained," MCL 712A.18(1), and the trial "court has broad authority in effectuating dispositional orders once a child is within its jurisdiction." *In re*

*Sanders*, 495 Mich 394, 406; 852 NW2d 524 (2014). Further, "the orders are afforded considerable deference on appellate review . . . ." *Id.*

The trial court did not abuse its discretion when it ordered respondent into a residential placement because, pursuant to MCL 712A.18(1)(e), the court was expressly authorized to enter this order. Therefore, it cannot be said that the trial court chose "an outcome falling outside the range of principled outcomes." *In re Diehl*, 329 Mich App at 687. In addition, the order entered by the trial court was "appropriate for the welfare of [respondent] and society." MCL 712A.18(1).

The jury adjudicated respondent responsible for three counts of second-degree criminal sexual conduct, which involved respondent sexually assaulting an eight-year-old child on several occasions. The court also referenced a prior incident in which EK claimed she was touched inappropriately by respondent, though this matter was not prosecuted. Further, respondent continued to maintain his innocence of these charges, and he had prior adjudications for second-degree home invasion. The trial court noted that it was contrary to respondent's welfare to remain in Bills's home because "supervision in [the] home [had] been inadequate to control him and to address his needs with regard to his own mental and emotional harm and [placed] him and others at [a] risk of continued harm." The evidence supported the trial court's conclusion.

Respondent's challenge is focused on the ordering of residential care, as opposed to community care, where he could remain with Bills. Given the deference due to the trial court's familiarity with the parties, we conclude that the trial court did not abuse its discretion in finding that residential placement was appropriate for respondent because this placement was appropriate for his welfare and society, in part, because Bills—in addition to respondent—denied respondent's wrongdoing. Additionally, respondent would not be able to receive and benefit from the specialized rehabilitative treatment at home as much as he could in a residential placement. This is especially true because Bills did not believe that respondent needed to rehabilitate his behavior. And, neither Bills nor Cagle were trained in psychosexual therapy, and respondent would have greater access to children should he remain in Bills's care. Respondent's adjudication for second-degree home invasion exhibited Bills's failure to control or supervise respondent's behavior. Because of the severity and repeated nature of respondent's conduct, it is not clear that respondent could be effectively rehabilitated in Bills's home. Respondent's conduct over a long period of time, as well as his failure to admit to, and lack of remorse for, his crimes—demonstrated by messaging EK's family members regarding his offenses and respondent's presence at a skating rink (while EK was there) in violation of a court order—reveal that the court did not abuse its discretion when it ordered respondent into a residential placement as it was appropriate for the welfare of both respondent and society.

Respondent argues that the court ignored facts and principles that weighed against respondent's removal from his mother's home. Respondent notes that Cagle recommended that respondent participate in outpatient therapeutic treatment that would keep him in his mother's care, and that her recommendation that respondent be placed at Wolverine Secure, was not her original recommendation.

However, the trial court was not bound by expert reports regarding placement, and although respondent had made some progress following his convictions as evidenced by Cagle's testimony that he had complied with the terms of his probation, the trial court made findings that respondent

would benefit from being out of his mother's home because of Bills's inadequate supervision. The trial court did not abuse its discretion in placing less weight on respondent's progress and good behavior following his adjudication than on the severity of respondent's crimes and his failure to admit wrongdoing. In addition, the trial court properly considered respondent's apparent lack of remorse for his crimes—demonstrated by messaging EK's family members regarding his offenses and respondent's presence at a skating rink while EK was there in violation of a court order.

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ James Robert Redford